IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD D. SALTERS, II,

   Petitioner,

    v.          CASE NO.  20-3100-JWL

DONALD HUDSON,
Warden, USP-Leavenworth,

   Respondent.

<u>MEMORANDUM AND ORDER</u>

   This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241.  Petitioner is in federal custody at USP-Leavenworth ("USPL").  Petitioner proceeds *pro se* and has paid the filing fee.  The Court ordered Respondent to show cause why the writ should not be granted.  (Doc. 2.)  Respondent filed an Answer and Return (Doc. 6), and Petitioner's time for filing a Traverse has passed.   The Court denies the petition.

**I.  Factual Background**

   Petitioner was sentenced in the District of South Carolina on November 13, 2013 and is serving a sentence of 138 months of incarceration, followed by six years of supervised release, for Conspiracy to Possess with Intent to Distribute and Distribute a Quantity of Cocaine Base, in violation of 21 U.S.C. § 846.  (Doc. 6–1, Declaration of W. McCormick, ¶4, 7.)   Petitioner's projected release date is August 2, 2022, via good conduct time release.  *Id*.

**II. Grounds and Requested Relief**

   Petitioner is challenging the Federal Bureau of Prisons ("BOP")'s implementation of the Second Chance Act of 2007.  Petitioner wants the BOP to place him in a Residential Reentry

Center ("RRC," commonly referred to as a halfway house) for twelve months.  Petitioner asks the Court to "ORDER the BOP in good faith to consider Petitioner on an individualized basis using the five factors set forth in 18 U.S.C. 3621(b) plus take into account the language in 18 U.S.C. 3624(c)(6)(C) granting him the maximum amount of time in the RRC to provide the 'greatest likelihood of successful reintegration into the community.'"  (Doc. 1, Petition, at 18.)

### III.  Discussion

#### A.  Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S. C. § 2241(c)(3).

#### B.  Statutory Framework

Under the Second Chance Act of 2007, Pub. L. No. 110-199, § 251 (2008), federal inmates are eligible to spend up to the final twelve months of their sentence in an RRC.  18 U.S.C. § 3624(c)(1).  The purpose of this placement is to give the inmate an opportunity to adjust to and prepare for reentry into the community.  *Id.*  Pre-release RRC placement decisions must be made on an individual basis according to criteria set forth in the Second Chance Act and the factors listed in 18 U.S.C. § 3621(b).  *See* 28 C.F.R. § 570.22 (2008) ("Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time frames set forth in this part.").  Under BOP policy and procedures, inmates are evaluated for RRC placement 17 to 19 months prior to their release date.  (Doc. 6–2, Declaration of C. Masters, ¶6.)

The Second Chance Act amended a previous version of 18 U.S.C. § 3624(c), which had limited pre-release RRC placement to the final six months or ten percent of a prisoner's sentence,

whichever was less.  After the statute was amended to expand the eligibility period to twelve months, the BOP issued two memoranda to provide guidance to staff in implementing the new amendment:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes . . . emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement . . . *are no longer applicable, and must no longer be followed*." . . . Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b).  However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

*Garza v. Davis*, 596 F.3d 1198, 1202–03 (10th Cir. 2010) (citations omitted).

The second BOP memorandum, issued on November 14, 2008, addressed requests for transfer to an RRC by an inmate who had more than twelve months remaining on their sentence— a "non-prerelease inmate."  It also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."  *Id*. at 1203 (citation omitted).  The Tenth Circuit has held that the BOP memoranda indicate that the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods exceeding six months, and they do not reflect any policy of categorical denial. *Id*. (citing *Ciocchetti v. Wiley*, No. 09-1336, 2009 WL 4918253, at *3 (10th Cir. Dec. 22, 2009)).

### C.  Justiciability

The Court finds that any claim Petitioner makes regarding his eligibility for pre-release consideration under § 3624(c) is not ripe for adjudication.  Petitioner makes no allegation that he has submitted a request for pre-release RRC placement, and Defendant states that he has not.  (Doc. 6-2, Masters Dec., at ¶ 7.)  If he had made such a request, it would be premature as he is not yet 17 to 19 months from his projected release date.  *See Staples v. Chester*, No. 08-3159-RDR, 2009 WL 10694827, at *4 (D. Kan. Sept. 3, 2009) ("The record shows petitioner has been advised he will be considered for such prerelease placement approximately 17 to 19 months before his projected October 2019 release date, and the court finds no ground that would entitle petitioner to that placement at this point in his sentence.").

Because the BOP's rules regarding pre-release RRC placement under § 3624(c) have not been applied to Petitioner, his claim is not ripe.  *See Calloway v. Thomas*, No. CV. 08-544-MA, 2009 WL 1925225, at *4 (D. Ore. July 1, 2009).  "Although resolution of these issues is undoubtedly important to petitioner," the Court discerns "no [irremediable] adverse consequences from requiring a later challenge following the BOP's actual application of the policies, especially given that petitioner is not eligible for review pursuant to § 3624(c)" until sometime the next year at the earliest. *Id*. at *5; *see also Curry v. Thomas*, No. 1:CV-14-0756, 2014 WL 4078639, at *3 (M.D. Pa. Aug. 18, 2014) (finding where a final RRC placement decision had not been made, a habeas petition must be dismissed since it is premature and does not present a justiciable case or controversy) (citations omitted).

### D.  Exhaustion

Even if Petitioner's claim were ripe, his petition would be subject to dismissal for lack of exhaustion.  Generally, a federal prisoner must exhaust available administrative remedies before

commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986). The BOP has a four-part administrative remedy program, which is codified at 28 C.F.R. Pt. 542. Under the administrative remedy program for inmates, an inmate is required to first attempt informal resolution of the complaint, and if unsuccessful, he must raise his complaint, with the informal resolution attached, to the Warden of the institution where he is confined. If dissatisfied with that response, he may appeal his complaint to the Regional Director. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the National Inmate Appeals Administrator in the Office of the General Counsel in Washington, D.C. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (finding that exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (citation omitted). If an inmate does not receive a response within the allotted time for a reply, including extensions, the inmate may consider the absence of a response to be a denial at that level. *See* 28 C.F.R. § 542.18. To properly exhaust administrative remedies, the petitioner must have presented the same claims in the administrative grievance that appear in the court petition. *Williams v. Wilkinson*, 659 F. App'x 512, 514 (10th Cir. 2016) (unpublished) (citing *Woodford*, 548 U.S. at 94).

It plainly appears from Petitioner's arguments and exhibits that he has not fully exhausted his administrative remedies. Petitioner does not claim to have submitted *any* administrative grievance related to RRC placement. In fact, Petitioner has not yet even filed an application for RRC placement.

Although exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, a narrow exception to the exhaustion requirement applies if a petitioner can

demonstrate that exhaustion would be futile.  *Daybell v. Davis*, 366 F. App'x 960, 962 (10th Cir. 2010) (unpublished) (citing *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235-36 (6th Cir. 2006)).  Such exceptions "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review."  *Lanni v. Hollingsworth*, No. 11-3066-RDR, 2012 WL 523744, at *3 (D. Kan. Feb. 16, 2012) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).

Petitioner argues exhaustion should be excused in his case for two reasons.  First, he asserts exhaustion will take too long based on the time guidelines for each step of the administrative remedy process and cause him irreparable harm.  Petitioner alleges the process of exhaustion takes as long as six months and "would completely destroy any hope that the Petitioner has of receiving twelve months in an RRC."  (Doc. 1, Petition, at 11.)  A similar "irreparable harm" argument was rejected in *Gaines v. Samuels*, where the petitioner argued that requiring full exhaustion would deprive him of time in an RRC.  *Gaines v. Samuels*, No. 13-3019-RDR, 2013 WL 591383, at *2 (D. Kan. Feb. 14, 2013) (finding no extraordinary circumstance to warrant waiver of exhaustion requirement); *see also McIntosh v. English*, No. 17-3011-JWL, 2017 WL 2118352 (D. Kan. May 16, 2017).  As the Court noted in *Gaines*, "[t]he Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies."  *Gaines*, 2013 WL 591383, at *2 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494-95 (1973)).

Petitioner's second argument for excusing exhaustion is that it would be futile.  His futility argument is based on statements made in 2008 by then-BOP Director Harley Lappin not to expect any mass movement to halfway houses, suggesting that any time in an RRC beyond six months is not productive, and claiming it was cheaper to house an inmate in a low security prison than to place him in an RRC.  (Doc. 1, Petition, at 5.)  Petitioner argues, "Based upon Mr. Lappin's public

comments regarding the Act, the BOP has taken a position that they are not placing anyone in an RRC for longer than six months despite the Act granting all inmates the right to be considered for up to twelve months." *Id*. at 15.  As a result, Petitioner asserts, requiring him to exhaust his administrative remedies would be futile.  *Id*.

A very similar argument has been considered and rejected by the Tenth Circuit.  *See Garza v. Davis*, 596 F.3d 1198 (10th Cir. 2010).  In *Garza*, the petitioner alleged that the BOP was categorically denying review and transfer of eligible inmates to RRCs and community correction centers in violation of statutes and regulations.  He argued he should not be required to exhaust his administrative remedies because it would be futile to do so, given the BOP's predetermination of the issues.  *Id.* at 1200.  The petitioner pointed to the two 2008 BOP memoranda discussed above, which provided guidance to staff on proper implementation of the Second Chance Act.  *Id.* at 1202-03.  The Tenth Circuit found the petitioner did not demonstrate that administrative review would be futile, and therefore, the petition was correctly dismissed for failure to exhaust administrative remedies.  *Id.* at 1204.

Here, Mr. Salters relies on public statements made by a former head of the BOP twelve years ago to support his futility argument.  Petitioner has not met his burden of demonstrating the futility of administrative review or any extraordinary circumstances that would excuse the exhaustion requirement.  Consequently, the petition must be dismissed for failure to exhaust.

**IT IS THEREFORE ORDERED THAT** the petition for writ of habeas corpus is **dismissed without prejudice**.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, on this 13th day of July, 2020.


**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**